### STUEBING TRUCK CO. v. OLSON.

(Circuit Court of Appeals, Seventh Circuit. June 23, 1923.)

#### No. 3207.

Patents ⊗328—1,160,666, claims 3–6, 9, for an improvement in trucks, held not infringed.

The Stuebing patent, No. 1,160,666, claims 3–6, 9, which according to the file wrapper was allowed only after the applicant had stated his apparatus differed from the prior references, in that the releasing catch must be manually operated, so as to require the operator first to lift the load, thereby preventing the sudden fall of the elevated platform, *held* not infringed, notwithstanding general language used in the claims, by defendant's device, which did not contain that feature.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity for infringement of a patent by the Stuebing Truck

⊗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Company against Claude A. Olson. Decree for defendant, and complainant appeals. Affirmed.

John W. Hill, of Chicago, Ill., for appellant.

Alex D. Salinger, of Boston, Mass., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. The patent in suit (No. 1,160,-666, to Stuebing) covers an improvement in trucks, concerning which patentee says:

> "My invention belongs to that class of trucks in which powerful mechanical devices are employed to assist in lifting the load to be carried; thus the load can be readily loaded or unloaded; and in connection with which supplementary platforms are employed, which have been previously loaded or upon which goods have been placed regularly in the course or process of manufacture."

> "It consists essentially in providing a frame or body portion and an elevating platform working up and down thereon, to lift or lower the load; a series of pawls and levers being the means for elevating and lowering the platform. The handle of the truck is so swiveled that it can be turned around in a circle, either when the truck is empty or loaded, so that the truck can be pulled at any angle. The handle must first be pulled down to raise the platform and put up to lower it, in order to force the operator to gain control of the load at all times, before raising or lowering the load."

The chief defense relied upon, and the only one we will consider, is noninfringement.

Claims 3, 4, 5, 6, and 9 are in issue, but consideration of them may be limited to the last claim, which most completely and fully supports appellant's position. The claim reads:

> "In a lifting truck, a lower frame having forward and rear wheel members, a lifting platform mounted on said lower frame, and capable of moving up and down thereon, the forward wheel member connected by a swivel to the front part of the said lower frame, a handle lever for raising the lifting platform, said handle lever being pivotally connected to the upper end of the swivel, and means operated by said handle lever for elevating the lifting platform, means for locking the lifting platform in its elevated position, *and means for releasing the lifting platform from its locked position in order that the lifting platform may be lowered,* the handle lever capable of being revolved around in a circle, carrying the front wheel member with it, said handle lever capable of being moved up and down during its revolution."

Appellee asserts that the italicized words described the element that distinguishes the patent from his truck. In explaining the workings of the combination, patentee in his specifications said:

> "In lowering the load or platform (2), it is necessary to first bring the handle down as shown in fig. (1). * * * When the platform (2) is elevated and held elevated by pawls (12) and (17), the pawl (13) is thrown back on the handle as shown by dotted lines in Fig. (1), *thus forcing the operator to gain control of the load by dropping said pawl (13), if he desires to lower the platform (2)."*

Appellee's urge is that the claim is limited to the structure thus shown, notwithstanding the language "means for releasing the lifting platform from its locked position in order that the lifting platform may be lowered" is broad enough to cover other structures. In support of its position, attention has been called, not only to the language

in the specifications heretofore quoted, but to the argument made in the patent office in support of the claim and upon which it was allowed. Answering certain citations confronting him in the Patent Office, particularly Miller, No. 1,104,533, patentee's attorney said:

"In the second place, he releases his locking means automatically; I release mine manually, for the following reason: When the elevated platform is up with the load and the operator wishes to turn the truck by using the handle, he throws the pawl out of connection with the pawl on the platform, the locking pawl having, of course, locked the platform and load in an elevated position. After the operator has turned the truck and wheeled it to its desired position, and *wishes to lower it, he is compelled to throw the pawl on the handle back in position with the pawl on the elevated platform*, and *to do this he lowers the handle to its lowest position and then manually releases the locking pawl*. He has now complete control of the load and can lower it with safety. *This manner of operating the (lower)[1] platform always makes the operator obtain control of the load before letting it down, preventing accidents, and avoiding great inconvenience.*"

After certain amendments to the specifications and claims had been made, the Patent Office was again urged to allow the patent and the argument was repeated. The patentee says:

"I release my locking means manually; he does not. By my construction, after the platform has been elevated with a load, the means for holding up the load between the handle and the lifting platform are releasd, and in order to again control the load the operator is forced to again connect the handle with the lifting platform, thus avoiding any accidents or premature dropping of the load; he has no such construction."

The claims as presented were thereupon allowed. Thereafter appellant added claim 9. It is insisted that this claim was presented after appellant had seen appellee's truck, but this charge may be passed. As originally drawn, the element under consideration in this claim read:

"And means for releasing the elevating platform from its elevated position, *independent of the hand lever.*"

The Examiner—

"recommended that the amendment be not entered, because *the matter set forth* in lines 9–11 of the amendment *is contrary to the operation of applicant's device as set forth in the specifications* commencing in line 4 from the bottom of page 3 and ending in line 9, page 4."

Patentee acquiesced in this ruling, and the claim was amended by striking the words "independent of the hand lever." With the specifications slightly modified thereafter, the claim was then allowed. That this was appellee's conception of the novelty of its truck is confirmed by its advertisements. From its catalogues we quote:

"The load cannot release itself by shock or jar, as it is automatically locked by means independent of the lever which lifts it. It is compulsory for the operator to get control of the load before he can open the lock to let the load down, thus avoiding accidents."

"Safety First With or Without Hydraulic Check.

"On the three-wheel B models (without hydraulic check) the load is automatically locked by means independent of the lever which lifts it and can

---

[1] Matter in italics in parentheses stricken out in original transcript.

291 F.—5

not release by shock or jar. When lowering the load, it is compulsory for the operator to get control of it, by means of the lever, before he can disengage the locking means. After he disengages the locking means, he is in easy position to lower the load slowly under control."

"The Stuebing B model trucks are the only trucks on the market that can be operated *safely without hydraulic checks.*"

It is hardly necessary to pursue the matter further, but, as confirmation of our conclusion, attention is directed to the drawings that accompany the patent, as well as the specifications, which disclose cooperating locking pawls that so overhang as to prevent their disengagement, except when the operator has lifted the load by means of the handle lever. The model, introduced as an exhibit and presented to this court as illustrative of the patent, disclosed the same structure.

It is earnestly contended, however, that the figures and specifications illustrate merely preferred forms of structure, and they should not limit or restrict the language of the claim. With this position we cannot agree. The patent was obtained upon the representation that the structure was so constructed as to "force the operator to gain control of the load at all times, before raising or lowering the load."

We have not deemed it necessary to refer to the prior art to confirm this conclusion, because the patent and the file wrapper are so conclusive as to require no such corroboration. Appellee's structure, it may be briefly said, was a truck which could be lowered without the operator first lifting the load. The "handle lever" had nothing to do with its lowering. Appellee avoided danger from a sudden drop of the load through the use of hydraulic checks. In other words, the locking pawls, which held the platform when lifted, are not overhanging, and are constructed so as to be disengaged by the use of a small lever, the use of which was in no way connected with the operation of the handle. Appellee's structure is operated without any regard to the control of the load by the operator through the handle lever or otherwise. The introduction of the hydraulic check to prevent the sudden dropping of the load is a separate and distinct element in the combination.

The decree is affirmed.